IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEAN MARIE CUNNINGHAM** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 12-6654 |
| v. | : | |
| | : | |
| **NOVO NORDISK** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                     APRIL 1, 2014

## MEMORANDUM OPINION

### INTRODUCTION

       Jean Marie Cunningham ("Cunningham") filed a two-count complaint against her current employer, Novo Nordisk, averring claims of: (1) discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, ("ADA"); and (2) retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, ("FMLA"). In her complaint, Cunningham essentially contends that she suffered a heart attack, underwent bypass surgery, and took medical leave under the FMLA to recuperate, and that upon her return, Novo Nordisk discriminated against her because of her medical condition and created a hostile work environment to compel her either to resign or to fail at her job.

       Before the Court is Novo Nordisk's *motion for summary judgment* [ECF 19] filed pursuant to Federal Rule of Civil Procedure (Rule) 56, Cunningham's opposition [ECF 22], and the reply [ECF 23]. For the reasons set forth herein, Novo Nordisk's motion is granted.

### BACKGROUND

       Based upon a careful review of the pleadings, depositions, and exhibits, the pertinent facts in the light most favorable to Cunningham, as the nonmoving party, are the following:

Novo Nordisk is a pharmaceutical and biopharmaceutical company that researches, develops, markets, and sells medicines. As part of the regulatory process for obtaining approval from the Food and Drug Administration to market and sell its products, it conducts clinical trials on these products.

Cunningham, a registered nurse, began employment at Novo Nordisk on March 3, 2008, as a manager in the Product Safety Department. Among her job responsibilities, Cunningham reviewed adverse event reports with respect to particular clinical studies and post-marketing cases, and represented the Product Safety Department at Product Review Board meetings.

On October 13, 2010, Cunningham suffered a heart attack and underwent quadruple bypass surgery six days later. She applied for and received FMLA leave of absence effective October 13, 2010, until January 11, 2011. In her absence, other managers and temporary help covered her workload.

On January 13, 2011, Cunningham's cardiologist, Francis C. Kempf, Jr., M.D., FACC, wrote a letter to Nicole Petralia, disability specialist in human resources at Novo Nordisk, indicating that Cunningham required an additional two weeks to fully recover and could return to work four hours a day during the period of January 17-28, 2011, then increase to six hours per day during the period of January 31-February 4, 2011. Dr. Kempf expected Cunningham to progress to full-time work "with total resumption of her usual responsibilities" by February 7, 2011. This return to work projected schedule was accepted by Novo Nordisk without modification.

On February 28, 2011, Cunningham returned to full-time work without any medical restrictions from her physician.

*Cunningham's Claims of Discrimination and Retaliation*

Following her return from medical leave, Cunningham claims that she was discriminated against and subject to retaliation primarily from Dr. Alvin Estilo, her then direct supervisor. Specifically, Cunningham claims that whenever she needed to attend a doctor's appointment, or had chest discomfort, or needed to work from home because her medical condition prevented her from shoveling snow or clearing snow off of her car, Dr. Estilo "seemed a little perturbed" or "acted disgusted". She claims that he once disregarded her chest pain complaint, stating that she "[couldn't] be cardiac because [she's] got four new vessels in [her] heart and [she] can't have any more chest pain." Dr. Estilo also told Cunningham that he was receiving "pressure" from his supervisor, Michelle Thompson ("Thompson"), senior director of regulatory affairs, and from Michael Sacco, a senior director, to have Cunningham do more work, and at one point informed her that she would have to "pick up more work".

2

Cunningham cites to other discriminatory conduct, such as: on January 31, 2011, during her annual evaluation, Cunningham received feedback from Dr. Estilo about her contributions to the Product Review Board ("PRB") meetings which are convened to review documentation and materials to be presented to the public. Specifically, Cunningham claims that while recuperating, Christine Rivera ("Rivera"), another manager who chaired the PRB meetings, went to her supervisor, who then went to Thompson and told Thompson that the PRB group felt that Cunningham "did not know what she was doing" and "was inappropriate". This comment made it to her yearly evaluation to which she had no opportunity to defend herself since she was out on FMLA leave.[1] Cunningham also claims she heard a co-worker state that she gave herself a heart attack to get the extra time off, and was referred to as being old.

Cunningham remains employed at Novo Nordisk.

**LEGAL STANDARD OF REVIEW**

When reviewing a motion for summary judgment, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A disputed issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is material only if it might affect the outcome of the suit under governing law. *See Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011) (citing *Gray v. York Papers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992)). A court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *See Anderson*, 477 U.S. at 248-49.

---

[1] Cunningham received the same "meets expectations" performance rating she had earned in her prior annual performance reviews, which was also consistent with her own self-evaluation. She received a merit increase in her salary and a bonus.

3

The moving party bears the initial burden of showing that there is no genuine issue of material fact and that it is entitled to relief. *See Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), offering concrete evidence supporting each essential element of the claim. *See Celotex Corp.*, 477 U.S. at 322-23. The nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which said party bears the burden of production, *Anderson*, 477 U.S. at 252, and may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, New Jersey v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In deciding a motion for summary judgment, the court must view the evidence, and make all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *See Macfarlan*, 675 F.3d at 271; *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009). Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage, the court must credit the nonmoving party's evidence over that presented by the moving party. *See Anderson*, 477 U.S. at 255. If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. *Id.* at 250.

**DISCUSSION**

The pertinent facts alleged in the complaint are not disputed. Cunningham suffered a heart attack and received 12 weeks of medical leave under the FMLA; leave that was extended

4

based on her cardiologist's opinion which initially cleared her for part-time hours that gradually increased to full-time status without medical restrictions. Cunningham concedes that at times and with her supervisor's permission, she worked from home following her return to work. This "privilege" to work from home continued until August 2011.

Despite the accommodations noted, Cunningham claims that Novo Nordisk discriminated against her and created a hostile work environment by: (1) unilaterally and gratuitously increasing her workload; (2) failing to reasonably accommodate her disability as requested by her physician; and (3) treating her with hostility and disdain every time she needed to see her doctor. Cunningham's contentions appear limited to the few months following her return to full-time status.

In its motion for summary judgment, Novo Nordisk argues that: (1) Cunningham cannot establish a *prima facie* case of discrimination because she does not have a disability, did not experience an adverse employment action, and has not presented any evidence of pretext; (2) Cunningham has failed to sustain her failure to accommodate claim because she was given every reasonable accommodation requested; (3) Cunningham has failed to establish a hostile work environment under the ADA because the alleged harassment was not severe or pervasive enough to alter the terms and conditions of her employment and Novo Nordisk cannot be held vicariously liable for the alleged harassment; and (4) Cunningham's FMLA retaliation claim fails as a matter of law.

### I. ADA Claim

The ADA "prohibits certain employers from discriminating against individuals on the basis of their disabilities." *Larkin v. Methacton School Dist.*, 773 F. Supp. 2d 508, 522 (E.D. Pa.

Feb. 23, 2011) (citation omitted), *see also* 42 U.S.C. § 12101 *et seq.* Specifically, the statute provides that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).[2]

The ADA defines a "qualified individual" as someone "who, with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8).

When there is no direct evidence of discrimination, claims are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir. 2000) (applying the *McDonnell Douglas* burden shifting rules to ADA claims); *Walton v. Mental Health Ass'n of Southeastern Penn.,* 168 F.3d 661, 667–68 (3d Cir. 1999) (same). Under *McDonnell Douglas*, a plaintiff, such as Cunningham, must first establish a *prima facie* claim of discrimination. To do so, Cunningham must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she suffered an otherwise adverse employment decision as a result of discrimination. *Williams v. Philadelphia Housing Authority Police Dept.,* 380 F.3d 751, 761 (3d Cir. 2004) (citations omitted). If Cunningham meets the *prima facie* burden, the burden shifts to Novo Nordisk to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas,* 411 U.S. at 802. If Novo Nordisk succeeds, the burden returns

---

[2] Amendments to the ADA took effect on January 1, 2009, and are, thus, applicable here. *See Larkin v. Methacton School Dist.*, 773 F. Supp. 2d 508, 522 n. 8 (E.D. Pa. Feb. 23, 2011).

to Cunningham to show that the stated reason(s) for the adverse employment action was false and merely a pretext for intentional discrimination. *Id.* at 804.

*A. Disability Determination*

To sustain her burden, Cunningham must first show that she is a disabled person within the meaning of the ADA. That is, she must demonstrate that she is an individual with either: (i) "a physical or mental impairment that substantially limits one or more of the major life activities of such [an] individual"; (ii) "a record of such an impairment"; or (iii) "being regarded as having such an impairment." 42 U.S.C. § 12102(1); *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 433 (3d Cir. 2009). Even though Cunningham argues that she is disabled, or that she was regarded as disabled by Novo Nordisk, she must establish that "she has an impairment; identify the life activity that she claims is limited by the impairment; and prove that the limitation is substantial." *Anderson v. Radio One, Inc.*, 2010 WL 3719088, at *6 (E.D. Pa. Sept. 20, 2010) (quoting *Fiscus v. Wal-Mart Stores, Inc.*, 385 F.3d 378, 382 (3d Cir. 2004)).

Major life activities include, but are not limited to, functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 42 U.S.C. § 12102(2)(A). However, "the fact that a claimant suffers from a physical impairment does not prove that she is disabled. Disability is present only when the functional limitations imposed by the impairments are so severe as to prevent all substantial gainful activity." *Griffin v. Comm'r Soc. Sec.*, 305 Fed. Appx. 886, 888 (3d Cir. 2009) (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)). Further, health conditions that "cause moderate limitations on major life activities do not constitute disabilities under the ADA." *Collins v. Prudential Inv. and Ret. Servs.*, 119 Fed. Appx. 371, 376 (3d Cir. 2005) (citation omitted). Thinking and concentrating are components of general cognitive function and, as such, are recognized major life activities

under the ADA. *See Weisburg v. Riverside Tp. Bd. of Educ.*, 180 Fed. Appx., 357, 362 (3d Cir. 2006); *see also Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 569 (3d Cir. 2002) (concentrating and remembering, or more generally, cognitive function, is considered a major life activity) (citations omitted).

Cunningham offers the following evidence of her disability: In October 2010, Cunningham informed Dr. Estilo that she was having "cardiac pain"; she subsequently suffered a heart attack and required bypass surgery. When she returned to work in early 2011, she informed colleagues at times that she would be working from home because she did not feel well, and that she emailed notes to herself to document her condition.[3] During the internal inquiry of her discrimination claim, Cunningham informed Novo Nordisk's employee relations investigator, Sunita Vellanki, that some months after returning from medical leave, she told Thompson that she "does not have the stamina anymore", described her memory problems as "brain farts", and that she "can't pick things up as quickly as before."[4] Cunningham also complained that a co-worker was not very sympathetic to her short-term memory struggles which she (Cunningham) attributed to being on a cardiac bypass machine.[5]

This Court finds, however, that these offered examples do not support Cunningham's assertion that she was substantially limited in her ability to think, concentrate, or work, or that she suffered a physical or mental impairment that substantially limited one or more of her major life activities. Rather, these are examples of situations that frequently occur following major surgery or in a work environment. Cunningham admits that on days that she was not feeling well

---

[3] Cunningham Dep., 149:7-8, July 9, 2013; *see, e.g.*, Pl. Ex. at NN000373, 376 [ECF 22-16]; Pl. Ex. C at 39.
[4] Investigative Report – Jean Marie Cunningham Complaint from Sunita Vellanki, Employee Relations Investigator, Pl. Ex. D at NN0000571 [ECF 22-5].
[5] Cunningham Dep., 179:15-180:4, July 9, 2013.

or had a doctor's appointment, she was permitted to work from home.[6] She also admitted that other than taking medical leave for the heart attack, there had never been a time during her employment at Novo Nordisk that she was incapable of working;[7] or incapable of performing her job duties after returning to full-time status from medical leave;[8] or incapable of caring for herself.[9] Based upon her own admissions, Cunningham did not suffer from an impairment that substantially limited a life activity, as required by the ADA, and cannot, therefore, be found to have a disability.

In addition, Cunningham's heart attack cannot constitute a "record" of having a disability because of its temporary nature, as "temporary, non-chronic impairment[s] of short duration" are not disabilities covered by the ADA. *Kiniropoulos v. Northampton County Child Welfare Service*, 917 F. Supp. 2d 377, 385 (E.D. Pa. Jan. 11, 2013) (citing *Macfarlan*, 675 F.3d at 274); *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002); *see also Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513-514 (E.D. Pa. Feb. 28, 2012) (plaintiff who suffered injury and underwent surgery that required FMLA leave could not establish a qualifying disability under the ADA as of the time of his termination). Under the circumstances, this Court opines that no reasonable fact finder could reasonably conclude that Cunningham, after returning to work, was disabled or limited in any major life activity within the meaning of § 12102(1) of the ADA.

As to Cunningham's contention that she was "regarded as disabled" by Novo Nordisk, she must show that she:

---

[6] *See, e.g.*, Pl. Ex. B [ECF 22-2]; Pl. Ex. C [ECF 22-4].
[7] Cunningham Dep., 21:18-22, July 9, 2013.
[8] *Id.*, 195:13-17.
[9] *Id.*, 21:23-22:2.

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Hershgordon v. Pathmark Stores, Inc.*, 285 Fed. Appx. 846, 848 (3d Cir. 2008) (citation omitted); *see also Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010); 42 U.S.C. § 12102(3).

When considering whether an employer regarded an employee as disabled, "[t]he analysis focuses not on [the employee and her] actual abilities, but rather on the reactions and perceptions of the persons interacting or working with [her]." *Kelly v. Drexel University*, 94 F.3d 102, 108-09 (3d Cir. 1996) (citing 2 *EEOC Compliance Manual*, § 902, at 902-3 to 902-4). "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Id.* at 109; *see also Rinehimer*, 292 F.3d at 382 ("The awareness that an employee is sick combined with some change in his work assignments is not enough to satisfy the 'regarded as' prong of the ADA."); *Radio One, Inc.*, 2010 WL 3719088, at *9 (disclosure of heart condition to coworkers was evidence of defendant's awareness of her heart condition, but it does not yield an inference that Radio One perceived her to be limited in a major life activity); *see also Penchishen v. Stroh Brewery Co.*, 932 F. Supp. 671, 675 (E.D. Pa. 1996) (evidence tending to show defendant's belief in plaintiff's impairment did not create a genuine issue of fact as to whether defendant perceived plaintiff's impairment as a substantial limitation on any major life activity).

10

Cunningham presents the following instances to imply that Novo Nordisk regarded her as disabled:

- Cunningham's 2010 evaluation, prepared by Dr. Estilo,[10] mentions her "illness in the last quarter of the year....";[11]

- Dr. Estilo's email to Thompson about Cunningham's absence from work indicates that she is "[n]ow with chest pain and is on Percocet." Thompson is not aware of any other occasions when Dr. Estilo[12] would inform others which medication someone was taking,[13] and Dr. Estilo could not recall any particular reason to relay such information;[14]

- Dr. Estilo's note to file that a co-worker commented that Cunningham gave herself the heart attack so she could take off work;[15] and

- Dr. Estilo's March 23, 2011, email to Cunningham's co-worker that Cunningham would be working from home because she was complaining of "some pain".[16]

Stray remarks from co-workers, even those implicating an employee's impairment or suggesting disqualification from her job, alone are not sufficient to raise the critical inference. *See Parker v. Port Authority of Allegheny County*, 90 Fed. Appx. 600, 603-04 (3d Cir. 2004) (statement by defendant's agent that plaintiff "couldn't handle the stress that goes along with the job" did not provide reasonable inference that defendant regarded plaintiff as disabled); *Ross v. Kraft Foods North America, Inc.*, 347 F. Supp. 2d 200, 204-05 (E.D. Pa. 2004) (employee relations manager's statement, "with your kind of disability you should not be working here" did not demonstrate belief that plaintiff was impaired in ability to perform major life activity).

---

[10] The evaluation indicates that Cunningham's manager is James Citak; however, Estilo prepared Cunningham's 2010 and 2011 evaluations. *See* Pl Ex. E at NN000128; Estilo Dep., 29:17-32:13, July 12, 2013.
[11] Pl. Ex. E at NN000133.
[12] Cunningham mentions throughout her brief that Estilo is a medical doctor, as if to suggest that his assessment and comments to her are based on his medical knowledge. *See, e.g.*, Pl. Br. at 8, 9 [ECF 22]. This is irrelevant, however, as he is not licensed to practice medicine in the United States. Estilo Dep., 8:13-21, July 12, 2013.
[13] Thompson Dep., 25:14-18, July 12, 2013.
[14] Estilo Dep., 55:1-57:7, July 12, 2013.
[15] Pl. Ex. H at NN000437; Estilo Dep., 65:7-8, July 12, 2013.
[16] Pl. Ex. G at NN000469.

Plaintiff's examples demonstrate that Dr. Estilo was aware of Cunningham's medical condition, her need for medication, and the insensitive comments made by co-workers. However, this evidence does not support a finding that her supervisor regarded her even as "somewhat disabled". *Radio One, Inc.*, 2010 WL 3719088, at *10 (citing *Ross*, 347 F. Supp. 2d 200). Nor does it support a finding that Novo Nordisk perceived Cunningham's medical condition as one that substantially limited her ability to work. To the contrary, after her recuperation and her cardiologist's opinion that she could return to work, Novo Nordisk gradually integrated Cunningham to full-time status. Moreover, the following instances demonstrate that Novo Nordisk did not regard Cunningham as disabled; *to wit*:

- The full statement regarding Cunningham's "illness" in her 2011 evaluation reads: "[Cunningham's] illness in the last quarter of the year resulted in many challenges for the group, *indicating her solid contributions*. In 2011, Jean is expected to step up her efforts to increase her contributions to the group;"[17]

- Around March 24, 2011, approximately one month after Cunningham returned to full-time work without any medical restrictions from her doctor, Dr. Estilo remarked to Cunningham in an email that she generally needed to be in the office during "core hours" – 8:30 a.m. to 5:00 p.m.;[18]

- Cunningham's 2011 evaluation noted that approximately one month after returning from medical leave, she had been fully handling her adverse event report responsibilities, as well as an increased workload that was distributed amongst a decreased work force;[19]

- Cunningham's note to self on June 7, 2011, about the inappropriateness of Thompson's comment when Cunningham mentioned that she was fatigued, "[you] should be back to normal now";[20]

- Dr. Estilo's August 2011 comment, "you can't be cardiac because you've got four new vessels in your heart and you can't have any more chest pain" and that Cunningham should not have occasional memory lapses or forget things since her surgery was so long ago;[21]

---

[17] Pl. Ex. at NN000133 [ECF 22-16] (emphasis added).
[18] Cunningham Dep., 142:21-143:5, July 9, 2013; Estilo Dep., 78:2-5; July 12, 2013.
[19] *See* Pl. Ex. at NN000134-142 [ECF 22-16].
[20] Cunningham Dep., 182:20-183:9, July 9, 2013.
[21] *Id.*, 126:21-22; Pl. Ex. C at 39.